FILED

2017 Mar-01  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLARD COLE and TAMMY COLE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 5:16-cv-00834-KOB |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

TABLE OF CONTENTS OF
DEFENDANT'S MEMORANDUM OF LAW
AND STATEMENT OF UNDISPUTED FACTS

1. STATEMENT OF UNDISPUTED FACTS …………………..…    1

2. STANDARD OF REVIEW …………………………………..    9

3. ARGUMENT ……………………………………………….    10

    I.    BREACH OF CONTRACT …………………………    10

        A. THE COLES FAILED TO COMPLY
           WITH THEIR DUTIES AFTER LOSS
           AND THEREBY BREACHED THE
           INSURANCE CONTRACT ………………    12

           1. DUTY TO SUBMIT A TIMELY
             INVENTORY …………………………..    12

           2. DUTY TO SUBMIT RECORDS
             AND RECEIPTS IN SUPPORT

OF INVENTORY ............................. 13

3. DUTY TO SUBMIT A TIMELY
PROOF OF LOSS .......................... 13

4. DUTY TO SUBMIT A PROPER
PROOF OF LOSS .......................... 14

5. DUTY TO EXHIBIT THE DAMAGED
PROPERTY ................................. 14

6. DUTY TO PROVIDE RECEIPTS AND
RECORDS IN SUPPORT OF CLAIM
FOR ALE ................................... 15

7. SUMMARY ................................. 15

B. OWNERS HAS NOT BREACHED
THE INSURANCE CONTRACT ............ 15

II.   BAD FAITH .............................................. 16

A. NORMAL BAD FAITH ............................ 17

1. OWNERS CANNOT BE FOUND TO
HAVE ACTED IN BAD FAITH
BECAUSE IT DID NOT BREACH THE
INSURANCE CONTRACT ................... 17

2. OWNERS CANNOT BE FOUND TO
HAVE ACTED IN BAD FAITH
BECAUSE IT WAS NEVER UNDER
ANY OBLIGATION TO PAY THE
CLAIM........................................ 18

3.  OWNERS CANNOT BE FOUND TO
HAVE ACTED IN BAD FAITH
BECAUSE IT HAD ARGUABLE
REASONS FOR NOT PAYING THE
COLES' CLAIM ……………………..                    19

B. ABNORMAL BAD FAITH ………………..           20

III.    FRAUD, MISREPRESENTATION,
SUPPRESSION AND DECEIT ………………           23

A. FRAUD ……………………………………          23

B. MISREPRESENTATION …………………..          24

C. SUPPRESSION ……………………………          25

D. DECEIT ……………………………………          25

IV.    DEBRIS REMOVAL …………………………          26

V.    ADDITIONAL LIVING EXPENSES (ALE) .         27

A. THE COLES HAVE BEEN PROVIDED
ALL ALE DUE TO THEM ………………..          27

B. THE COLES ARE NOT ENTITLED TO
ANY ADDITIONAL ALE BECAUSE
THEY HAVE FAILED TO PROVIDE
ANY RECEIPTS IN SUPPORT OF THIS
PORTION OF THEIR CLAIM ……………          29

VI.    CONCLUSION ………………………………          30

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

WILLARD COLE and                     )
TAMMY COLE,                          )
                                     )
        Plaintiffs/Counter Defendants,  )
                                     )
vs.                                  )        CIVIL ACTION NO.:
                                     )        5:16-CV-834-KOB
OWNERS INSURANCE                     )
COMPANY,                             )
                                     )
        Defendant/Counter Plaintiff, )

**DEFENDANT'S MEMORANDUM OF LAW
AND STATEMENT OF UNDISPUTED FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Owners Insurance Company [hereinafter "Owners"], and submits the following Memorandum of Law and Statement of Undisputed Facts in support of its Motion for Summary Judgment as to all pending claims made against it by the Plaintiffs, Willard Cole and Tammy Cole [hereinafter collectively "the Coles"];  and its Motion for Summary Judgment as to Count IV (Declaration as to Claim for Further Additional Living Expenses) and Count V (Declaration as to Claim for Debris Removal) of its counter-claim.

STATEMENT OF UNDISPUTED FACTS

1.  The Coles' house [hereinafter "the subject property"] was damaged by fire on or about February 10, 2015.  [Exhibit A - Coles' Complaint at ¶1].

1

2.   At the time of the fire, the subject property was insured by Owners policy number 49-911-976-00 ["insurance policy"].  [Exhibit B – insurance policy - pg 1].

3.   The insurance policy contains a provision entitled, "WHAT TO DO IN CASE OF LOSS", [hereinafter "duties after loss provision"] which lists certain steps the insured must take in the event of a covered loss.  [Exhibit B – pg 46].

4.   Owners adjuster came to the fire scene on the day of the fire, met with the Coles, provided a $3,000 advance to the Coles, and began his investigation of the loss.  [Exhibit C – Deposition of Willard Cole and Tammy Cole - pg 14, line 18].

5.   Owners sent a letter to the Coles dated February 10, 2015 which stated in bold, capital letters that it was a request for proof of loss and records.  [Exhibit D – Affidavit of John Gilmore – pg 2][Exhibit D-1 – Letter to Coles dated February 10, 2015].

6.   Included with Owners' letter to the Coles dated February 10, 2015, was a blank proof of loss form, blank personal property inventory forms, instructions for completing both forms, and a copy of the portion of the insurance policy entitled, "WHAT TO DO IN CASE OF LOSS".  [Exhibit D – pg 2] [Exhibit D-1].

7.   Owners determined the value of the damage to the dwelling alone to be $46,551.71 for replacement cost, and $34,006.20 actual cash value.  [Exhibit D – pg 2].

8.   After subtracting a $1,000.00 deductible, Owners paid $33,006.20 to the

2

Coles for the dwelling loss.  [Exhibit D – pg 2].

9.  On March 19, 2015, the Coles hired, "The Howarth Group" [hereinafter "THG"], a public adjusting company based in Tennessee, to appraise the loss. [Exhibit C – pg 16, line 17 and exhibit 3].

10.  The Coles then accepted the $33,006.20 dwelling payment from Owners, but explained by letter dated April 24, 2015 that they considered this sum to be a partial payment for the dwelling.  [Exhibit C – pg  27, line 11 and exhibit 5].

11.  Owners received correspondence from Chuck Howarth [hereinafter "Howarth"] by which he invoked the appraisal process on behalf of the Coles. [Exhibit E – Letter from Howarth to Owners dated March 25, 2015 – pg 1].

12.  By letter dated April 20, 2015, Owners informed Howarth and the Coles that appraisal was premature, stating:

> "At this time it is our determination that appraisal is premature since you have not formally presented your claim as required in your policy.  Since you have not submitted the required claim documents, we have not had the opportunity to review to agree or disagree with your figures.  For this reason, there is presently no dispute to appraise."

[Exhibit F – Letter from Owners to Howarth and Coles dated April 20, 2015 – pg 1].

13.  The letter dated April 20, 2015, set out the specific policy section stating what an insured is required to do in the event of a loss, and noted that

3

Owners would not agree to appraisal of any coverage disputes. [Exhibit F – pgs 1 and 2].

14. In its letter of April 20, 2015 to Howarth and the Coles, Owners stated that it had not received the Coles' personal property inventory, or sworn statement in proof of loss, as required by the policy; and, as to these documents, the letter further stated:

> "The 60 day policy deadline to submit these items has now passed; however, we will extend the deadline an additional 30 days, in good faith. **It is therefore necessary for you to submit this documentation by May 20, 2015. Your failure to comply with the policy and your obligations within the policy period could adversely affect coverage for the loss.** Enclosed you will find Proof of Loss and Inventory forms. (emphasis in original).
> [Exhibit F – pg 3].

15. On June 4, 2015, Owners received a document dated June 3, 2015, which the Coles identified as being their Sworn Statement in Proof of Loss. [Exhibit G – Cole's initial Sworn Statement in Proof of Loss – pg 2]

16. This Coles' Sworn Statement in Proof of Loss was incomplete as it listed a value for the dwelling claim, but labeled the personal property claim as "open", and labeled the claim for additional living expenses as "open". [Exhibit G – pg 2]

17. By letter dated July 2, 2015, Owners informed the Coles that it appeared that payment was being requested for the repair of items which may not have sustained damage; and that because coverage, scope and amount of loss were at

issue, appraisal remained premature.  [Exhibit H – Owners letter to the Coles dated July 2, 2015 – pgs 1 and 2].

18.  The letter dated July 2, 2015 further cited the Coles to the policy provision covering their duty to retain any damaged property.  [Exhibit H – pg 1].

19.  Owners re-examined the dwelling at the request of the Coles and revised its estimate of the dwelling loss to $57,458.10 for replacement cost, and $43,227.15 actual cash value.  [Exhibit D – pg 2].

20.  Owner sent the Coles a supplemental check for $9,220.95 based upon this revised estimate.  [Exhibit C – pg 41, line 14][Exhibit D].

21.  Included with the supplemental check was a notice explaining how the Coles could recover an additional $14,230.95 upon completion of repairs, and how to initiate a supplemental claim if new damage was discovered during the repair process.  [Exhibit D – pg 2][Exhibit C – exhibit 10].

22.  The Coles cashed this check, but explained by letter to Owners dated August 5, 2015 that they considered this sum to be another partial payment for the dwelling.  [Exhibit C – pg 41, line 20 and exhibit 11].

23.  By their letter of August 5, 2015, the Coles thanked Owners for the payments made on the dwelling, and once again requested appraisal.  [Exhibit C – exhibit 11]

24.  By letter to the Coles dated August 28, 2015, Owners acknowledged receipt

of the demand for appraisal in the Coles' letter of August 5, 2015 and once again informed the Coles that it disputed coverage and would not agree to appraisal of a coverage dispute.  [Exhibit I – Owners letter to Coles dated August 28, 2015 –pgs 1 and 2].

25. In the letter of August 28, 2015, Owners further noted that in had already paid the Coles for the covered damage to their dwelling, that the amount paid was more than the Coles claimed for this same damage, and that the scope of the loss was what remained in question and scope of loss was not subject to appraisal. [Exhibit I – pgs 2 and 3].

26. Although the Coles had still not submitted a personal property inventory, or a sworn statement in proof of loss as to their personal property loss, the Coles again requested appraisal via a letter dated October 22, 2015.  [Exhibit J – Coles' letter to Owners dated October 22, 2015.]

27.  On September 14, 2015, more than 200 hundred days after the fire, the Coles finally submitted their personal property inventory to Owners.  [Exhibit C – pg 48, line 1 and exhibit 13].

28. Owners responded to the Coles' letter of October 22, 2015 via a letter dated November 5, 2015, from attorney Joanna Ellis, wherein Ellis explained that the Owners would not agree to the appraisal process until all scope of loss and coverage issues were resolved.  [Exhibit K – Ellis letter to Coles dated November

5, 2015 – pg 1].

29.  In her letter to the Coles, Ellis noted the insureds' duties after loss, Owners

numerous efforts to get the Coles to comply with these duties, and the fact that the

Coles had not complied with the duties in spite of the fact that they had been

receiving guidance from THG since March of 2015.  [Exhibit K – pgs 1 and 2].

30. Owners took the Coles' examinations under oath on December 22,

2015.  [Exhibit L – Examination under oath of Tammy Cole].

31.  The Coles testified that virtually all of the contents of the house had been

disposed of, and most of the interior walls and flooring had been removed and

disposed of.  [Exhibit C – pg 79, line 5; pg 96, line 3; and pg 97, line 19].

32.  On December 22, 2015, after their examination under oath were concluded,

the Coles submitted three documents which they identified as being:  proof of loss

as to contents, proof of loss as to additional living expenses, and proof of loss as to

debris removal.  [Exhibits M – proof of loss forms dated December 22, 2015 – pgs

1, 2 and 3].

33. The examination under oath transcripts were sent to the Coles on January

12, 2016 with a letter directing them to read and sign the transcripts as required by

the insurance policy.  [Exhibit N – Owners letter to Coles of January 12, 2016 – pg

1][Exhibit C – pg 121, line 18 and exhibit 23 to deposition].

34. Having not received signed transcripts from the Coles, Owners sent a

second letter on February 18, 2016, asking the Coles once again to comply with the policy by signing and returning the transcripts. [Exhibit O – Owners letter to Coles of February 18, 2016 – pg 1] [Exhibit C – pg 121, line 18 and exhibit 24].

35. Having still not received the signed transcripts, Owner sent a third letter (via regular and certified mail) to the Coles dated March 8, 2016, in which it once again asked the Coles to comply with the policy, and to sign and return their transcripts. [Exhibit P – Owners letter to Coles of March 8, 2016 – pgs 1 and 2] ][Exhibit C – pg 121, line 18 and exhibit 25].

36. Corrections to the transcripts were made by the Coles and sent Owners by counsel by letter dated March 14, 2016, and received March 17, 2016. [Exhibit Q – Coles' letter dated March 14, 2016 – pg 1].

37. The Coles did not provide any receipt or record in support of their claim prior to their letter of March 14, 2016, at which time they provided a single duplicate receipt from Standard Furniture. [Exhibit D – pg 2][Exhibit C – exhibit 13].

38. The Coles personal property inventory makes no mention of any furniture having been purchased at Standard Furniture. [Exhibit C – exhibit 13].

39. At their depositions taken February 1, 2017, the Coles acknowledged that they had receipts and account records showing their purchases of items allegedly lost in the fire. [Exhibit C – pg 91, line 15 to pg 92, line 23].

40.  The Coles have submitted no receipts showing any expense incurred for debris removal.  [Exhibit C - pg 58, line 14].

41.  The Coles have submitted no receipts in support of their claim for incurred additional living expenses.  [Exhibit C - pg 64, line 13].

42.  Chuck Howarth testified that all repairs to the Coles' house could be completed in less than four months.  [Exhibit R - pg112, line 14].

43.  The Coles testified that they were supplied with alternate housing for more than four months immediately after the fire.  [Exhibit C - pg 65, line 1].

<u>STANDARD OF REVIEW</u>

A motion for summary judgment made pursuant to Rule 56 of the Federal Rules of Civil Procedure is due to be granted by the trial court if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Great American Insurance Company v. Jefferson County Commission</u>, 776 F.Supp.2d 1252 (N.D. Ala. 2010).  Upon the movant making a prima facie showing that there is no genuine issue as to any material fact, the burden shifts to the non-movant to present evidence which establishes the existence of a genuine issue of material fact.  <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604 (11th Cir. 1991).  Mere conclusions and unsupported factual allegations by the non-movant will not satisfy the non-movant's burden to show facts

sufficient to defeat a properly supported summary judgment motion.  <u>Bald</u>

<u>Mountain Park, Ltd. v. Oliver</u>, 863 F.2d 1560, 1563 (11th Cir. 1989).

## **ARGUMENT**

## I.   **BREACH OF CONTRACT**

The Coles allege that Owners has breached the insurance contract.  To

prevail on this allegation, the Coles must show:  1) the existence of a valid contract

between the parties; 2) their own performance under the contract; 3) Owners' non-

performance; and 4) damage.  <u>State Farm Fire & Cas. Co. v. Slade</u>, 747 So.2d 293,

303 (Ala. 199).  The Coles' breach of contract claim fails because they cannot

show their own performance, and they cannot show Owners' non-performance.

The insurance contract contains a provision titled "WHAT TO DO IN CASE

OF LOSS".[1]  This policy provision is crucial to the issues that developed in the

course of handling the Coles' claim, and reads in pertinent part as follows:

*WHAT TO DO IN CASE OF LOSS*

*1. PROPERTY*

*If a covered loss occurs, the insured must:*

*c.  make an inventory of all damaged and destroyed
property;  show in detail quantities, costs, actual
cash value and amount of loss claimed;  attach to
the inventory all available bills, receipts and re-
lated documents that substantiate the figures in the*

---

[1] This type policy provision is commonly referred to as a "duties after loss" provision, and will
be referenced as such at times hereafter in this motion.

*inventory.*

 d.  *send to us, within 60 days after the loss, proof of loss signed and sworn to by the insured, including:*

  (1)  *the time and cause of loss;*

  (2)  *the interest of insureds and all others in the property;*

  (3)  *actual cash value and amount of loss to the property;*

  (4)  *all encumbrances on the property;*

  (5)  *other policies covering the loss;*

  (6)  *changes in the title, use, occupancy, or possession of the property;*

  (7)  *if required, any plans and specifications of any damaged building or fixtures; and*

  (8)  *the inventory of all damaged or stolen property required by 1.c above.*

 e.  *exhibit the damaged property to us or our representative as often as may be reasonably required .*

 f.  *submit to statement and examinations under oath while not in the presence of any other insured, and sign the transcripts of the statements and examinations.*

 g.  *provide us with records and documents we require and permit us to make copies.*

 h.  *produce receipts for any increased costs to maintain your standard of living while you*

11

> *reside elsewhere and records pertaining to*
> *any loss of rental income.*

Having set out the elements of a breach of contract claim, and the portion of

the contract which is at issue, Owners will now detail the reasons why the Coles

breach of contract claim has no merit.

### A. THE COLES FAILED TO COMPLY WITH THEIR DUTIES AFTER LOSS AND THEREBY BREACHED THE INSURANCE CONTRACT.

"Under Alabama law, where an insured fails to comply with a condition

precedent to recovery under an insurance contract, the insured cannot sustain a

breach of contract claim.  See e.g., Nationwide Ins. Co. v. Nilsen, 745 So.2d 264,

269 (Ala. 1998); Akpan v. Farmers Ins. Exchange, Inc., 961 So.2d 856, 872

(Ala.Civ.App. 2007)."  Morton v. Automobile Ins. Co. of Hartford, Conn., 102

F.Supp.3d 1248 (N.D. Ala. 2015).  Compliance with a "duties after loss" provision

in an insurance policy is a condition precedent to recovery.  Hillery v. Allstate

Indem. Co., 705 F.Supp.2d 1343, 1362 (S.D. Ala. 2010).

The Coles failed to comply with the following duties after loss, where

compliance with each was a condition precedent to coverage:

### 1. DUTY TO SUBMIT A TIMELY INVENTORY

Section 1(c) of the aforementioned duties after loss provision obligated the

Coles to provide a complete inventory of the items damaged or destroyed as a

result of the fire.  Section 1(d)(8) of this same provision obligated the Coles to

submit the completed inventory within 60 days after the loss.

In spite of repeated requests to comply with the terms of the policy, the Coles did not submit their contents inventory to Owners until September 14, 2015. The Coles thus breached the policy by first submitting their contents inventory more than 200 hundred days after the loss.

## 2. DUTY TO SUBMIT RECORDS AND RECEIPTS IN SUPPORT OF INVENTORY.

The Coles contents inventory was not just untimely, it was further deficient in that there was not a single record or receipt attached to this inventory.   Section 1(c) of the duties after loss provision required the Coles to attach to their inventory all bills, receipts and related documents that substantiated the figures therein.

The Coles did not provide a single document in support of their contents inventory when they submitted the inventory to Owners – no original receipts, no duplicate receipts, no canceled checks, no bank statements, no debit card records, no credit card records, and no invoices.  In March of 2016, more than a year after the loss, the Coles provided Owners with a single duplicate receipt from Standard Furniture.  At their deposition in 2016, the Coles admitted that they could have provided additional receipts and account records in support of their claim.

## 3. DUTY TO SUBMIT A TIMELY PROOF OF LOSS.

The contents list is not the only item the Coles failed to submit in a timely manner.  Section 1(d) of the duties after loss provision obligated the Coles to

13

submit a signed and sworn proof of loss within 60 days of their loss.  When the

Coles failed to submit their sworn proof of loss within this 60 day time frame,

Owners voluntarily extended the time for submission an additional 30 days to May

20, 2015.

An initial proof of loss was finally submitted by the Coles to Owners on

June 3, 2015 – a date more than 100 days after the loss and 14 days past the

voluntary extension provided by Owners.

### 4.  DUTY TO SUBMIT A PROPER PROOF OF LOSS.

The initial proof of loss was not just late, it was also incomplete.  The proof

of loss submitted covered only the dwelling portion of the Coles' claim. The Coles

made no effort to submit a complete proof of loss until December 22, 2015 (more

than 300 hundred days after the loss), when they first submitted proofs of loss as to

their contents claim, debris removal claim, and their claim for additional living

expenses.

### 5.  DUTY TO EXHIBIT THE DAMAGED PROPERTY.

Section 1(e) of the duties after loss portion of the policy obligated the Coles

to exhibit the damaged property to Owners, or to its representatives, as often as

reasonably required.

When the Coles finally submitted an inventory, Owners wanted to review

the damaged property with this inventory in hand.  The Coles told Owners that this

was not possible because they (the Coles) had unilaterally disposed of virtually all of their personal property immediately after the fire. In disposing of these items, the Coles once again breached the terms of the insurance policy.

### 6. DUTY TO PROVIDE RECEIPTS AND RECORDS IN SUPPORT OF CLAIM FOR ALE.

The Coles were obligated by Section 1(h) of the duties after loss portion of the policy to provide Owners with receipts for any increased costs to maintain their standard of living while they resided away from the damaged dwelling, and to provide records pertaining to any loss of rental income. Although they have made a claim for additional living expenses (ALE), the Coles have provided no receipts which prove that any ALE were incurred, or the amount thereof. They have also failed to provide any records pertaining to any alleged loss of rental income.

### 7. SUMMARY.

The Coles have failed to comply each of these aforementioned policy provisions. Any one of these breaches, standing alone, is fatal to the Coles' breach of contract claim. Taken together, these multiple breaches illustrate that Owners is entitled to summary judgment as to the Coles' breach of contract claim.

### B. OWNERS HAS NOT BREACHED THE CONTRACT

The burden is on the Coles to show that Owners failed to comply with the terms of the insurance contract. The Coles cannot satisfy this burden. This is so because Owners was not required to investigate the claim, or make any payment

thereon, until the Coles complied with all of their duties after loss.   Pittman v. State Farm Fire and Cas. Co., 868 F.Supp.2d 1335 (M.D. Ala. 2012)(An insurance company has no duty to investigate or pay a claim until such time as the insured has complied with all of its duties after loss).

Because the Coles never complied with the condition set out in their policy, it cannot be said that Owners failed to perform because Owners' obligation to further investigate the claim was never triggered.

## II.   **BAD FAITH**

The burden of proof placed on a plaintiff in a bad faith case is particularly heavy.   Independent Life & Acc. Ins. Co. v. Parker, 449 So.2d 233 (Ala. 1984). This is so because mere negligence or bad judgment by the insurer does not equate to bad faith.   Ex parte Government Employees Ins. Co., 729 So.2d 299 (Ala. 1999). Bad faith is found only where the insured has acted with intent to injure.   Taylor v. Aetna Life Ins. Co., 54 F.Supp.2d 1076 (M.D. Ala. 1999).   There must be a refusal to pay coupled with a conscious intent to injure.   Georgia Cas. and Sur. Co. v. White, 582 So.2d 487 (Ala. 1991).

In Alabama, there is a single tort of bad faith but this tort can be proven in either of two ways.   State Farm Fire & Cas. Co. v. Brechbill, 144 So.3d 248 (Ala. 2013).   The insured can prevail by showing what the Alabama courts have titled "normal" bad faith or by showing what these same courts have titled "abnormal"

16

bad faith. Id at 257. The Coles appear to argue that they have experienced both "normal" and "abnormal" bad faith. Owners will explain why neither is seen here.

### A.   NORMAL BAD FAITH

To prevail on their allegation of "normal" bad faith, the Coles must show: a) Owners' breach of the insurance contract; b) an intentional refusal to pay the claim; c) the absence of a debatable reason for refusing to pay the claim; and d) Owners' knowledge of the absence of such a debatable reason. Id at 257.

### 1. OWNERS CANNOT BE FOUND TO HAVE ACTED IN BAD FAITH BECAUSE IT DID NOT BREACH THE INSURANCE POLICY.

For a "normal" bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to judgment as a matter of law on said contract claim. Shelter v. Mut. Ins. Co. v. Barton, 822 So.2d 1149, 1155 (Ala. 2001). For the reasons set forth hereinabove, the Coles cannot prove that Owners breached the insurance contract. Because the Coles are unable to show any breach by Owners, their contract claim is obviously not of such strength that they would be entitled to a directed verdict thereon. The Coles' "normal" bad faith claim necessarily fails due to their inability to prove this essential element of the claim to the extent mandated by law.

17

2. <u>OWNERS CANNOT BE FOUND TO HAVE ACTED
IN BAD FAITH BECAUSE IT WAS NEVER UNDER
ANY OBLIGATION TO PAY THE CLAIM.</u>

The Coles' "normal" bad faith claim also fails because they cannot show

that Owners intentionally refused to pay their claim.  Owners was not obligated to

pay the Coles' claim because the Coles failed to comply with the terms of their

insurance policy.  In <u>Hillery v. Allstate Indemn. Co.</u>, 705 F.Supp.2d 1343(S.D.

Ala. 2010), the Court explained the effect of an insured's failure to comply with

his duties after loss, stating:

> "Thus, the law is clear is clear that an insurer's
> obligation to pay covered claims under a policy
> of insurance is not triggered until the insured
> complies with the insurer's reasonable requests
> for statements and documents pursuant to a 'duties
> after loss' provision."

The Coles failed to comply with numerous duties imposed upon them by the

insurance policy where compliance therewith was a condition precedent to any

right to have their claim paid, or even investigated.  Despite the Coles non-

compliance, Owners continued its attempt to investigate the Coles claim and had

not denied the claim at the time this lawsuit was filed by the Coles.  In fact,

Owners had paid the Coles the undisputed portion of their dwelling claim and had

given the Coles two advances against their contents claim.  Owners did not act in

bad faith.

18

3.  OWNERS CANNOT BE FOUND TO HAVE ACTED
    IN BAD FAITH BECAUSE IT HAD ARGUABLE
    REASONS FOR NOT PAYING THE COLE'S CLAIM.

It is well established that where the insured fails to eliminate <u>any</u> debatable

reason for the denial of payment, whether legal or factual, his bad faith claims fails

as a matter of law.  <u>Knutilla v. Auto-Owners Ins. Co.</u>, 578 So.2d 1359 (Ala. Civ.

App. 1991);  <u>Malone v. Allstate Indem. Co.</u>, 2014 WL 2592352 (N.D. Ala. June

10, 2014);  <u>Christian v. Country Mut. Ins. Co.</u>, 2014 WL 2434294 (S.D. Ala. May

29, 2014).  Here, the Coles' "normal" bad faith claim fails because Owners has

several arguable reasons for having not paid the claim at the time the Coles' filed

this lawsuit.  These reasons include:

a)  The Coles' failure to submit a timely personal property inventory;

b)  The Coles' failure to submit receipts and/or documents in support of
    their personal property claim;

c)  The Coles' failure to submit a timely proof of loss;

d)  The Coles' failure to submit a proper proof of loss;

e)  The Coles' spoliation of evidence in breach of the policy.

At the time the Coles filed this lawsuit, their claim remained pending for the

reasons stated above.  Owners asserts that each of these stated reasons, standing

alone, serves as a bars to the Coles' bad faith claim.  See, <u>Alabama Gas Corp. v.

Travelers Cas. and Sur. Co.</u>, 990 F.Supp.2d 1154, 1160 (If any one reason for

denial of coverage is at least arguable, no further inquiry is required and a claim for bad faith refusal to pay fails).  Owners further asserts that even if each and every one of these reason was somehow found in hindsight to be invalid, the Coles' bad faith claim would fail nonetheless because each serves as an <u>arguable</u> reason for not paying the claim.  See, <u>Liberty Nat'l Life Ins. Co. v. Allen</u>, 699 So.2d 138 (Ala. 1997)(To defeat a bad faith claim an insurer does not have to show that its reason for denying coverage was ultimately found to be correct, only that it was arguable).  The Coles are unable to show that Owners lacked a debatable reason for not paying their claim, nor can they show knew that Owners knew it had no debatable reason for not paying the claim.

### B.  <u>ABNORMAL BAD FAITH</u>

Although the focus of their bad faith count is on the "normal" version thereof, the Coles also allege the "abnormal" version of bad faith.  "Abnormal" bad faith is established by proving a conditional fifth element.  <u>Bailey v. National Fire Ins. Co. of Pittsburgh, PA</u>, 2015 WL 1883725 (N.D. Ala. April 24, 2015).  This fifth element the insured must prove is the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. <u>Brechbill</u>, 144 So.3d at 258.

The Coles' claim of "abnormal" bad faith fails both factually and legally. For the reasons set forth above, the Coles cannot show that were due further on

their claim, nor can they show that Owners lacked an arguable reason for not having made further payment.  These same elements must be proven to prevail on an "abnormal" claim, so this version of the Coles' bad faith claim fails as well. Owners will not rehash its previous arguments, but will address the fifth element that is required to show "abnormal" bad faith, namely:  whether Owners intentionally failed to determine if there was an arguable reason for not paying the Coles' claim.

Owners acted in good faith at all times with regards to the Coles' loss.  An Owners' adjuster arrived at the scene on the day of the fire, shortly after it was extinguished.  He examined the fire scene and spoke with the Coles.  The Coles were provided a $3,000 advance payment that same day.

Problems with the Coles' claim arose because the Coles failed to do what was required of them by the policy.   In Pittman v. State Farm Fire & Casualty Co. 868 F.Supp.2d 1335, (United States District Court, M.D. Alabama, Southern Division, June 21, 2012) the Court explained the critical importance of the insured's compliance with post loss duties, stating:

> "The difficulty for the insurer, however, is that an
> insured who breaches the contract will be loath to
> come forward with evidence of his breach;  after all,
> he wants the illicit payout. So the problem is one of
> asymmetrical information:  the insured knows whether
> or not he caused the loss, but the insurer lacks the in-
> formation necessary to decide whether to pay the claim
> or deny it for breach of contract. To address this prob-

lem, insurers include post-loss duties requiring the in-
sured to provide information that will shed light on the
matter.  If the insured refuses, his or her non-coopera-
tion will in and of itself amount to a breach. With this in
mind, it makes sense to construe the post-loss duty pro-
visions as strict conditions precedent to coverage, as
the Nilsen and Hillery courts have done, because doing
so forces the insured to help the insurer investigate the
merits of the claim at the outset rather than allowing him
to stonewall and let him hold the threat of litigation over
the insurer's head like the sword of Damocles."  Pittman
v. State Farm Fire & Casualty Co. 868 F.Supp.2d 1335,
(U.S. District Court, M.D. Alabama, Southern Division,
June 21, 2012)."

Here, the Coles have provided little in support of their claim.  This is so even

though they were being assisted by Howarth and Associates in the presentation of

their claim beginning approximately 37 days after the fire.  The Coles ignored their

duties under the policy and ignored repeated notices from Owners of the need to

comply with these duties.  Any delay in reviewing this claim is solely the fault of

the Coles.  The Coles' claim that Owners failed to determine if there was an

arguable reason for denying their claim fails because the Coles' claim was not

denied; and because the Coles failed to comply with the terms of the insurance

policy and thereby trigger Owner's duty to make any further payment on the claim.

The claim was still under investigation when the Coles filed this lawsuit, because

the Coles failed to properly and timely present their claim.

## III.   FRAUD, MISREPRESENTATION, SUPPRESSION AND DECEIT

### A. FRAUD

To prove fraud, the Coles must establish the following elements:  (1) that

Owners made a false representation; (2) that the false representation concerned a

material existing fact; (3) that the Coles relied upon the false representation; and

(4) that the Coles were damaged as a proximate result of the reliance.  Deng v.

Scroggins, 196 So.3d 1015, 1024 (Ala. 2014); Exxon Mobile Corp v. Ala. Dept. of

Conservation and Natural Resources, 986 So.2d 1093, 1114 (Ala. 2007).  The

Coles' fraud claim fails because they are unable to prove any of these elements.

A plaintiff cannot recover on a fraud claim where he admits that the

defendants never told him anything untrue.  Keller v. Security Federal Sav. and

Loan Ass'n, 555 So.2d 151, 155 (Ala. 1989).  At their depositions, the Coles'

could not point to a single false representation made to them by anyone from

Owners.[2]  The Coles are thus unable to establish this threshold and most essential

element of fraud.

Where a non-moving party fails to make a sufficient showing on an essential

element with respect to which he bears the burden of proof, the moving party is

---

[2] The Coles complain about differences of opinion as to what they should have been paid for additional living expenses (ALE), how long it was estimated that they would be out of their house, methods of repairing their metal  roof, and whether they were given permission to dispose of damaged property.  But when asked to detail Owners' alleged, "misrepresentations, the things that were said that were not true", the Coles were unable to give any examples.  [Exhibit X – Deposition of Willard Cole & Tammy Cole – page 123, line 11 to page 129, line 9].

entitled to summary judgment.  Cofield v. Allstate Indem. Co., 2014 WL 310447, 2

(N.D. Ala. January 28, 2014).  Owners is entitled to summary judgment on the

Coles' fraud claim.

B. MISREPRESENTATION

The Coles' misrepresentation claim is akin to their fraud claim, and it too

fails because the Coles are unable to show that a misrepresentation was made to

them by anyone from Owners.

The elements of misrepresentation are:  (1) a misrepresentation of material

fact; (2) made willfully to deceive, recklessly, without knowledge, or mistakenly;

(3) which was justifiably relied on by the plaintiff under the circumstances; and (4)

damage proximately caused by such misrepresentation.  Miller v. Pfizer Inc., 2014

WL 2155020, 5 (N.D. Ala. May 22, 2014).

Because the Coles cannot prove that anyone from Owners made a false

statement to either of them, their misrepresentation claim cannot succeed.  Owners

is entitled to summary judgment on this allegation of misrepresentation.  Owners

also entitled to summary judgment on this count because the Coles cannot show

that they reasonably relied upon any statement made to them that was contrary to

the terms of their insurance policy.  Alfa Life Ins. Corp. v. Reese, 185 So.3d 1091

(Ala. 2015).

## C. SUPPRESSION

The Coles must prove each of the following elements in order to prevail on their claim of suppression:  (1) suppression of a material fact; (2) that Owners was under a duty to disclose; (3) because of a confidential relationship between Owners and the Coles or because of the circumstances of the case; and (4) that injury resulted as a proximate consequence of the non-disclosure.  Garner v. JMIC Life Insurance Co. Inc., 693 So.2d 478, 478 (Ala.Civ.App. 1997).

In the present case, the Coles have failed to identify even a single material fact that Owners failed to disclose to them.[3]  In the absence of proof of suppression of any material fact, the Coles' suppression claim fails.

The Coles claim further fails because any fact that Owners was under a duty to disclose to them would have been contained in the insurance policy issued to the Coles.  When a plaintiff receives documents which put him on notice of certain facts, he cannot prevail on a subsequent claim that these same facts were suppressed.  Express Oil Change LLC v. ANB Ins. Services Inc., 933 F.Supp.2d 1313, 1343 (N.D. Ala. 2013).

## D. DECEIT

Deceit on the part of a defendant is shown by proving that the defendant

---

[3] When they were asked what facts Owners had suppressed, the Coles complained that Owners adjuster did not concur with the Coles' dwelling estimate.  They were unable to give any example of what was allegedly suppressed from them.  [Exhibit X – Deposition of Willard Cole & Tammy Cole – page 131, line 9 to page 132, line 12].

willfully or recklessly misrepresented or suppressed material facts with the intent

to mislead.  Hughes v. Hertz Corp., 670 So.2d 882, 888 (Ala. 1995).  The Coles

cannot jump this hurdle, as they have admitted under oath that no one from Owners

made any false statement to them or suppressed any material fact from them.

Even if the Coles could show misrepresentation or suppression (they

cannot), their allegation of deceit would still fail because there is absolutely no

evidence whatsoever of any intent to mislead on the part of anyone from Owners.

Owners is entitled to summary judgment on the Cole's allegations of deceit.

## IV.   DEBRIS REMOVAL

The Coles aver that they are entitled to insurance proceeds to cover the costs

of debris removal following the fire.  The insurance policy issued to the Coles

obligates them to provide receipts in prove this expense was incurred and the

amount thereof.  The Coles admit that they have failed to provide any such receipts

to Owners.  With regards to receipts for debris removal, the Coles gave the

following testimony:

> Q.   And again, to date have you provided any receipts to Owners
> showing what was paid to these individuals?
>
> A.   I haven't.
>
> Q.   It's my understanding from talking to you previously that there
> was a – on at least one occasion, there was a dumpster brought
> out that ya'll paid for?

A.    Yes.

Q.    Have you provided any receipts showing what was paid for that
dumpster?

A.    No, I haven't.
[Willard Cole & Tammy Cole deposition – pg 58, line 14]

Their failure to provide receipts is fatal to this portion of the Coles' claim.

## V.    ADDITIONAL LIVING EXPENSES (ALE)

The Coles argue that they are entitled to Additional Living Expenses

("ALE") in an amount equal to policy limits.  The Coles are wrong for two

reasons.  The first reason is that the Coles have been provided with ALE for the

full amount of time set by the policy.  The second reason is that the Coles have not

provided any receipts in support of their claim for ALE over and above what

Owners has already paid on their behalf.

### A. THE COLES HAVE BEEN PROVIDED ALL ALE DUE TO THEM.

The insurance policy issued to the Coles states that, in the event of loss,

ALE will be provided, "for only the shortest time required to repair or replace the

residence premises or for you to permanently relocate".

The sole repair estimated submitted to Owners by the Coles was made by

Chuck Howarth.  At his deposition, Mr. Howarth confirmed that it would take less

than four months to fully repair the Coles' house.  The exact testimony offered by

Mr. Howarth in this regard is as follows:

A.    It was determined that it was from start to finish a
      four-month construction project.

Q.    That's what I was getting at.  That was what you
      determined and often do to make the   repairs on this
      house, it would have taken about four months.

A.    Yeah.  And, actually I think we figured three months
      was just going to push it too close because we got a
      lot of roofing going on, a lot of framing.  And so if
      it's three months and a week, you're paying for all
      of this stuff for four months.

Q.    I understand.

A.    So we felt like it wasn't fair to a contractor to limit
      him to just 90 days on this one.  So that's how we did.

Q.    But you felt certainly within four months that would
      kind of be a maximum on this one?

A.    Yes, sir.
[Chuck Howarth deposition – pg 112 line 14]

According to the testimony of their own estimator, the Coles were due four

months of ALE.  At their deposition, the Coles acknowledged receiving ALE for in

excess of four months.  The Coles acknowledged that they were provided with a

hotel room for six weeks, and a rental house for three months thereafter.  The

Coles' testimony regarding ALE was as follows:

Q.    So again, to make sure I'm clear on your testimony,
      Owners paid for the hotel room for the six months you
      were there?

A.    Not six months.

28

Q.     I'm sorry.  Six weeks?  I'm sorry.

A.     Yeah.

Q.     Until April 1st.

A.     Yeah.

Q.     And they paid rent on the house for another three months?

A.     Three months.
[Willard Cole & Tammy Cole deposition – pg 65, line 1]

The Coles were provided with ALE for a time period well in excess of the

four months needed to repair their house.  The Coles did not submit any proof that

additional ALE was incurred.

B.  <u>THE COLES ARE NOT ENTITLED TO ANY ADDITIONAL ALE</u>
    <u>BECAUSE THEY HAVE FAILED TO PROVIDE ANY RECEIPTS</u>
    <u>IN SUPPORT OF THIS PORTION OF THEIR CLAIM.</u>

The insurance policy required the Coles to provide receipts in support of

their claim for ALE.  In that respect, the policy reads in  pertinent part as follows:

*WHAT TO DO IN CASE OF LOSS*

*If a covered loss occurs, the insured must:*

h.  *produce receipts for any increased costs to*
    *maintain your standard of living while you*
    *reside elsewhere and records pertaining to*
    *any loss of rental income.*

The Coles admit that they did not provide any receipts in support of their

ALE claim at any time.  [Coles' deposition – page 65, line 13].

## VI.   **CONCLUSION**

For the reasons set forth above, Owners is entitled to summary judgment as to all pending claims filed against it by the Coles.  Owners is also entitled to summary judgment with regards to its request for a declaration that no further sums are owed to the Coles for debris removal or for additional living expense.

/s/  Warren "Bo" Burke, Jr.

_____

Warren H. Burke, Jr. (ASB-4684-B65W)
Attorney for Owners

/s/  Daniel R. Klasing

_____

Daniel R. Klasing (ASB-2630-G66D)
Attorney for Owners

**OF COUNSEL:**
KLASING, WILLIAMSON & BURKE, P.C.
1601 Providence Park
Birmingham, Alabama 35244
(205) 980-4733phone
burkejr7@aol.com
danklasing@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing with the below listed attorneys of record for the Plaintiffs on this the 1st day of March, 2017, by filing same electronically with the Clerk of Court which will cause a copy of same to be served on the following:

Gary V. Conchin
Kenneth B. Cole, Jr.

Franklin Taylor Rouse
Conchin, Cloud & Cole, LLC
2404 Commerce Court
Huntsville, AL 35801

/s/  Warren "Bo" Burke, Jr.
_____
OF COUNSEL