# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WILLARD COLE and TAMMY COLE,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **5:16-CV-834-KOB** |
| **OWNERS INSURANCE CO.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

The Coles' home caught fire and almost burned down on February 10, 2015. The Coles filed a claim with their homeowners' insurance provider, Defendant Owners Insurance. Although Owners paid part of the Coles' claim under its Policy, the Coles say that Owners owes them far more money. Furthermore, the Coles assert that Owners has steadfastly refused to work with them or use the Policy's "appraisal" provision to resolve the parties' disputes over the extent and value of the loss caused by the fire.

The matter is now before the court on the parties' cross motions for summary judgment (doc. 31; doc. 33; doc. 35) and Owners's "Motion to Strike Trial and Deposition Testimony of Plaintiffs' Proffered Expert Chuck Howarth" (doc. 36).

Briefly stated, the Coles allege breach of contract, bad faith, and fraud—all based on Owners's action and inaction after their house fire. As to breach of contract, the Coles ask for specific performance of the appraisal provision in the Policy to determine the ultimate value of their claim; payment of "additional living expenses"; and payment for debris-removal expenses. As to fraud, the Coles appear to plead three different kinds: suppression, misrepresentation, and deceit.

1

Owners brings seven causes of action in its counterclaim. First, it charges that the Coles breached the contract by submitting a claim that violated the Policy's misrepresentation and fraud provisions. Second, Owners asserts that the Coles committed fraud. Third, Owners claims spoliation of evidence. Fourth, fifth, and sixth, Owners asks for declaratory relief about its liability under the Policy regarding additional living expenses, debris removal, and any additional liability it has under the Policy, essentially contending that it owes the Coles nothing because the Coles failed to meet the conditions precedent under the Policy. Seventh, Owners appears to seek recovery of the amounts already paid to the Coles because of the alleged fraud.

The court first addresses the parties' cross motions for summary judgment. The cross motions before the court involve the Coles' breach of contract cause of action on the Policy's appraisal provision and Owners's counterclaim for declaratory relief on the Coles' requests for debris-removal expenses and additional living expenses. (Doc. 31; Doc. 33; Doc. 35). The court also addresses Owners's motion for summary judgment on the Coles' breach of contract causes of action relating to debris-removal expenses and additional living expenses alongside the parties' cross motions on Owners's similar counterclaim assertions.

Second, the court addresses the Coles' motion for summary judgment on Owners's other counterclaim allegations: breach of contract as to the fraud and misrepresentation provision of the Policy, spoliation, fraud, and repayment of the sums already paid to the Coles because of the alleged fraud. (Doc. 31).

Third, the court addresses Owners's motion for summary judgment on the Coles' remaining unaddressed causes of action: fraud and bad faith. (Doc. 35).

For the reasons discussed below, the court will GRANT the Coles' "Motion for Summary Judgment Against Defendant As to the Liability Portion of the Breach of Contract Claim" (doc.

33); the court will GRANT IN PART and DENY IN PART the Coles' "Motion For Summary Judgment And/Or To Dismiss Defendant Owners Insurance Company's Counterclaims" (doc. 31); and the court will DENY Owners's motion for summary judgment (doc. 35).

In addition, the court has before it Owners's "Motion to Strike Trial and Deposition Testimony of Plaintiffs' Proffered Expert Chuck Howarth." (Doc. 36). The court will GRANT Owners's motion to strike that testimony to the extent Mr. Howarth testified as an "expert" about legal conclusions regarding Owners's bad faith. In making its findings in this Opinion, the court has not given weight to Mr. Howarth's opinions on those matters.

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

The filing of cross motions for summary judgment does not affect the applicable Rule 56 standard. *See, e.g.*, *United States v. Oakley*, 744 F.2d 1553, at 1555-56 (11th Cir. 1984). The Eleventh Circuit has noted that "[c]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Id*. at 1555.

## FACTS

### A. *The Fire & The Claim Investigation*

Willard and Tammy Coles's two-bedroom, three-bath home caught fire on February 10, 2015. Photographs taken in the aftermath of the fire reveal charred walls, melted curtains, and smoke stains throughout the home. The fire originated in the Coles' laundry and utility room; that room, the kitchen, and attic all suffered direct fire damage. The house filled with smoke as

the fire grew. Two rooms in the house suffered water damage when the fire department extinguished the fire.

The Coles filed a claim with Owners, their homeowners' insurance company. The Coles ultimately sought four different types of payments under the Policy coverage: "dwelling" payments for structural damages to the home; "contents" payments for their lost personal property; debris-removal expenses; and additional living expenses for the time they could not live in their home.

The Coles contacted Owners the day of the fire. The same day, Owners mailed to the Coles' address a letter including details on the Coles' obligations in making a claim. The letter included a "proof of loss" form, "blank personal property inventory forms," and noted that the Coles needed to fill out the forms and return them to Owners within 60 days of the loss. The letter also included a copy of the "What To Do In The Case of Loss" section of the Policy, which the court discusses in further detail below.

The "proof of loss" is a one-page form that requests basic information about the claim, such as the insured's policy number and the type and time of loss. The form also includes a short section breaking down the overall damage value or cost for each type of claimed loss.

Owners also sent Stanly Bonhomme, its insurance adjustor, to the Coles' home on the day of the fire. Mr. Bonhomme met with the Coles and began Owners's investigation into the loss. Mr. Bonhomme asked Mr. Cole about where he believed the fire started, walked through the home, and took pictures. Mr. Bonhomme also issued to the Coles a $3,000 payment, which Mr. Bonhomme stated was to be used for immediate necessities that the Coles may have required after the fire, including a place to stay. (Bonhomme Depo. at 45-46). Mr. Bonhomme suggested to the Coles that the extent of the damage was severe, observing that the Coles could throw

everything from the living room into a dumpster.  Mr. Bonhomme had full access to the home and the Coles did not impede him in any way.

Before assessing the value of the Coles' claim, Owners hired a third-party firm to investigate the cause of the fire.  That firm determined that the cause of the fire was lint from the dryer.

Owners also hired ServiceMaster, a third-party property salvaging and restoration service, to inspect the contents of the Coles' home.  Mr. Bonhomme told the Coles that he would contact ServiceMaster and that ServiceMaster would determine what was salvageable and what was not.  In particular, at issue in this claim were losses related to smoke damage, which Mr. Bonhomme noted could not be reliably determined until ServiceMaster examined the property. ServiceMaster's inspectors arrived two days after the fire.  The inspectors examined the home and found 13 salvageable items, which they removed on March 18.  Owners did not tell the Coles how long they should keep the remaining unsalvageable items in their house.

In his deposition, Mr. Bonhomme stated that, for this kind of claim, ServiceMaster would report to Owners about what property could or could not be restored.  ServiceMaster would then tell Owners's adjustor what steps it planned to take; *i.e.*, either restoring the property or throwing it out.  The report from ServiceMaster discussed by Mr. Bonhomme does not appear in the materials before the court, although a report from "National Vendor," another third party apparently hired by Owners, indicates that the value of the lost contents was $91,095.54 replacement cost value or $65,065.46 actual cash value.  (Doc. 34-9).  Owners did not share that report with the Coles during the claim investigation.  (Doc. 33 ¶ 7).

Owners also found that the value of the Coles' dwelling claim was $46,551.71 replacement cost and $34,006.20 actual cash value.  Owners initially paid the Coles $33,006.20

for the dwelling claim (having subtracted the Coles' $1,000 deductible), but did not include payment for personal property. The Coles accepted the check as a partial payment on their dwelling claim.

In mid-March, the Coles hired their own third-party consultant, The Howarth Group, to help them evaluate the dwelling damage, prepare a contents inventory of their home for Owners's review, and assess the value of their claims.

Sarah Grandanetti, a contents inspector for The Howarth Group, went to the Coles' home after the fire in March or April 2015. Ms. Cole gave Ms. Grandanetti a three-ring binder with notes about the lost contents of her home, although Ms. Cole had already disposed of most of the home's damaged contents by the time Ms. Grandanetti began her inspection. Ms. Grandanetti remarked in her deposition that "the house was gutted" when she got there and the only contents remaining had been placed on the home's back porch. Nonetheless, Ms. Grandanetti drew up a report on the contents of the Coles' home based on Ms. Coles's notes and on what she observed.

In developing her report, Ms. Grandanetti asked the Coles not just about whether the property existed, but about the property's specific characteristics. For example, Ms. Grandanetti asked the Coles about the materials used in the construction of their furniture. She also asked the Coles where they bought their property and "most of the time they knew." Using that information, Ms. Grandanetti found a replacement price for every item, and she included that information on the inventory she prepared and that the Coles ultimately submitted to Owners. Ms. Grandanetti emphasized that she researched replacement values for every item that the Coles said they lost, down to the price of a box of Honey-Nut Cheerios from Wal-Mart. (Grandanetti Depo. at 22-23).

The Howarth Group also evaluated the Coles' home for the value of dwelling damages, which included damages to the structure such as the Coles' roof.

At the end of March, the Coles, through a letter mailed by The Howarth Group, told Owners that they disagreed with Owners's conclusion about the value of their dwelling claim. In that letter, The Howarth Group told Owners that it calculated the dwelling damages to be $164,458.19 actual cash value, well above Owners's valuation and payment for that part of the Coles' claims. However, The Howarth Group did not present to Owners a value for the Coles' contents claim at that time. The Coles asked Owners to begin the requested appraisal process to resolve the dispute about the claims' values. The Coles and The Howarth Group, who the Coles had designated as their appraiser, also offered to meet an Owners adjustor and go through the house and discuss specifically the losses that the Coles disputed.

Owners did not respond to the Coles' request for nearly a month. On April 20, when Owners finally responded, Owners stated that the requested appraisal process was premature. Owners contended that, despite the Coles' stated disagreement about Owners's belief on the value of the claim, they had no dispute because the Coles had not "formally" presented their claim amount. Owners also included in its letter another "proof of loss" form and reminded the Coles of their obligations under the Policy, such as submitting the "proof of loss" form. Owners, which noted that the 60-day period for sending in a proof of loss had expired, offered the Coles an additional 30 days to submit their proof of loss, until May 20, 2015.

The Coles mailed the proof of loss form to Owners on June 3, 2015, and Owners received it the next day. The proof of loss form noted that the claimed amounts for additional living expenses and personal property were "open," but included a requested amount for dwelling damages.

A month later, on July 2, 2015, Owners told the Coles that it believed that they had claimed losses for undamaged items. Nevertheless, Owners again refused appraisal because the "coverage, scope, [and] amount of loss" were in dispute, making appraisal of the value of the loss premature. Owners's letter also asked the Coles, *for the first time*, to retain any damaged property.

On July 16, David Eshenour, an Owners adjustor who had earlier taken over the claim from Mr. Bonhomme, inspected the Coles' home. He observed additional, previously-uncompensated damage to the home, and increased Owners's estimate of the dwelling loss to $57,458.10 replacement cost value and $43,227.15 actual cash value—still substantially less than the Coles' valuation for the dwelling loss of $164,458.19 actual cash value. Owners issued a check for $9,220.95 to the Coles, supplementing Owners's initial dwelling-loss payments. At this point, neither Owners nor the Coles had presented to the other party a proposed value for the contents claim.

On August 5, the Coles informed Owners, once again by letter, that they would accept the supplemental check, but that they still disputed Owners's valuation of their dwelling claim. The Coles again demanded appraisal. At the end of that month, Owners responded, reiterating its earlier response that appraisal was inappropriate because it disputed coverage and scope of loss.

Also at the end of August, ServiceMaster returned the 13 items that it had taken in March to restore. However, Ms. Cole concluded that 12 of the 13 items had not been satisfactorily restored.

Two weeks later, the Coles submitted their contents inventory and claim valuation to Owners. The Coles' inventory of personal property was 43 pages long and enumerated in excess of 1,000 items. For many, but not all items, the inventory included hyperlinks to the same or

similar items on various retailers' websites, such as Sears and Dillard's. The inventory included items as small as a box of Honey-Nut Cheerios from the Coles' kitchen and as big-ticket as a living-room recliner. The inventory included estimated ages of the items and noted the items for which the Coles could not remember the purchase date. The Coles and The Howarth Group stated that the contents loss was $102,660.86 replacement value or $88,563.44 actual cost value.[1]

On October 22, 2015, the Coles sent Owners another demand for the appraisal process based on the valuation disputes. Owners responded on November 5, asking for examinations under oath from the Coles and observing that the Coles had already offered dates for those examinations. Owners requested that the Coles preserve all items on their inventory and stated that they needed to determine whether the items had fire, smoke, or water damage, because only some of the items were in rooms that had suffered direct fire damage.

On November 24, Owners once again told the Coles that it would not agree to appraisal until the disputes over coverage had been resolved. Owners stated—without further elaboration—that these coverage disputes included possible, but unidentified, misrepresentations by the Coles, "a question as to whether a covered loss as defined by the policy occurred," and the Coles' failure to timely submit an inventory. Owners reiterated the necessity of the Coles' examinations under oath and emphasized that, although it had singled out some of the Coles' duties under the Policy, it did not waive any of the Coles' other possible failures to comply.

On December 22, Owners took the Coles' examinations under oath pursuant to the Policy. The Coles sent another letter through counsel again demanding appraisal.

During all this time, the Coles' house was uninhabitable. Although they attempted some cleanup by renting a dumpster and hiring people to assist in cleaning out the house, they had to

---

[1] Owners's apparently-undisclosed contents-loss calculation was $91,095.54 replacement cost value or $65,065.46 actual cost.

live somewhere else. The Coles and Owners appeared to agree that placing them in a hotel as a long-term accommodation would not be the most cost-effective way to provide an alternative living situation while the home was repaired. Ultimately, the Coles moved into another property they owned but typically rented. The Coles accordingly added a claim for lost rents on that property under the Policy's additional living expenses coverage and also made a claim for debris removal. At their examinations under oath, the Coles submitted amended proofs of loss for their contents, additional living expenses, and debris removal claims.

On January 12, 2016, Owners sent the Coles the transcripts of their examinations. The Coles signed and returned those transcripts with corrections on March 14, 2016.

On April 18, 2016,—more than a year after the fire—Owners mailed to the Coles' attorney a letter stating that it had received the Coles' signed examinations under oath, but that it had "come to [Owners's] attention that the amounts claimed on each Proof of Loss (Debris Removal, Contents, and Additional Living Expenses) may be incorrect." (Doc. 34-13). In addition, Owners said it was "unable to accept the amounts presented as accurate with the information we know at this time." But Owners added that it was "not able to accept or reject your proof of loss as submitted." (*Id.*).

Owners did not explain what, specifically, caused it to doubt the accuracy of the Coles' claims. Nor did Owners note what further steps it would be taking to investigate the Coles' claims and to determine whether it would deny the claims. Nor did Owners request that the Coles submit any further information or documentation to support their claim.

The Coles filed the instant lawsuit soon thereafter.

*B.      The Policy*

The Coles' homeowners' insurance policy with Owners contains the following relevant provisions.

*a.      Coverage and Disputes*

The Policy covers damage resulting from fire and includes supplemental coverage for debris removal and additional living expenses following a fire.  As relevant here, the Policy provides up to $179,000 in coverage for dwelling damage and $125,300 for contents.  The Policy calls for the parties to determine the loss amount by replacement cost value, *i.e.*, the cost to repair or replace lost or destroyed property with like kind or quality.  However, the Policy permits replacement value claims to be settled on the actual cash value until damaged property is repaired or replaced.

To resolve disagreements on the loss value, the Policy includes an "appraisal" provision:

> If you and we fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal.  Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

> The appraisers shall then appraise the loss, stating separately the cash value and loss to each item.  If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss.  If they cannot agree, they will submit their differences to the umpire.  A written award by two will determine the actual cash value or amount of loss.

(Policy at 16).

For "additional living expenses," the Policy includes supplemental coverage up to $35,800.  It states that Owners would pay "for only the shortest time required to repair or replace the residence premises or for [the insured] to permanently relocate."  (Policy at 11).

In addition, the Policy includes a provision voiding the Policy if an insured intentionally conceals or misrepresents a material fact, engages in fraudulent conduct, or makes false statements relating to the insurance.

> b.      *"What To Do In Case of Loss"*

The Policy includes a section titled "What To Do In Case of Loss," which, unsurprisingly, provides instructions to policyholders on what to do in the case of loss.  More specifically, the section details the information that the insurer will generally need to adjust a claim.  For example, it requires policyholders to send Owners a "proof of loss signed and sworn to by the insured" within 60 days of the loss.  The proof of loss includes information such as the time and cause of the loss, the interest of the insureds in the property, the value of the claim, and an inventory of damaged or destroyed personal property.  The Policy requires the inventory to "show in detail quantities, costs, actual cash value and amount of loss claimed," and requests submission of "all available bills, receipts and related documents" substantiating the claims in the inventory.  (Policy at 24-25).

The Policy further requires insureds to exhibit damaged property to Owners "as often as may be reasonably required"; submit to examinations under oath and to sign transcripts of the examinations; and provide Owners with any records and documents required.  (Policy at 24). The Policy also requires insureds to provide Owners with "receipts for any increased costs to maintain [the insured's] standard of living while [the insured] resides elsewhere and records pertaining to any loss of rental income."  (*Id.*).

> C.      *Claims In This Lawsuit*

The Coles assert that Owners breached the Policy by failing to submit to the appraisal process, by delaying payment, and by failing to pay the insurance proceeds due to them under the

contract, including proceeds for debris removal and additional living expenses from the lost rental income.

The Coles assert that Owners acted in bad faith by failing to investigate their claim and by failing to pay the losses covered under the Policy. The Coles also appear to allege three varieties of fraud: misrepresentation, suppression, and deceit. The Coles plead these fraud theories "shotgun" style in one count of their complaint. However, in their response to Owners's motion for summary judgment on this count, the Coles assert only an argument that Owners committed fraud by misrepresentation, and the Coles do not contest Owners's assertion that they have failed to establish any suppression or deceit claim.

In sum, the Coles want Owners to comply with the appraisal provision of the Policy and to pay for their dwelling losses, contents losses, debris-removal expenses, and alternative living expenses, as well as compensatory and punitive damages based on Owners's misconduct, *i.e.*, its alleged bad faith and fraud. In their motions for summary judgment, the only relief the Coles ask for is Owners's compliance with the appraisal provision.

Owners filed a counterclaim with seven substantive counts. First, Owners asserts that the Coles breached the concealment or fraud provision of the Policy because they made "intentional misrepresentations and concealments of material fact" during Owners's investigation of the claim. Second, Owners contends that the Coles committed fraud by making material misrepresentations or by concealing material facts. Third, Owners accuses the Coles of spoliation; specifically, Owners claims that the Coles intentionally failed to preserve "numerous contents of the dwelling which are the subject of dispute as to condition following the fire." (Doc. 3 ¶ 29). Likewise, Owners claims that the Coles failed to preserve the contents and parts

of their home that were "distant" from the fire that Owners believed could be repaired, rather than replaced.

Fourth through seventh, Owners seeks several declarations regarding its obligations to pay the Coles' claims under the Policy. Specifically, they seek declarations that they are not liable to pay additional living expenses, any expenses for debris removal, or anything else because the Coles violated the Policy's terms. Finally, Owners appears to seek a declaration that the Coles must pay back any proceeds Owners paid as a result of the Coles' alleged fraud. (*See* doc. 3 at 25).

Before the court are three motions for summary judgment—two from the Coles and one from Owners. As noted, the court has cross motions for summary judgment on the Coles' breach of contract cause of action and Owners's counterclaim for declarative relief on the Coles' requests for debris-removal expenses and additional living expenses. In addition to the cross motions, the Coles also move for summary judgment on Owners's counterclaims against them for breach of contract (fraud and misrepresentation provision only), spoliation, and fraud. Finally, the court has Owners's motion for summary judgment on the Coles' fraud and bad faith causes of action.

After briefly addressing Owners's motion to strike, the court addresses the claims involved in the parties' cross motions for summary judgment; then the remaining claims addressed by Coles' motion for summary judgment; and, finally, the remaining claims addressed by Owners's motion for summary judgment.

## **DISCUSSION**

*A.      Owners's Motion To Strike*

As an initial matter, Owners moves to strike the deposition testimony of Chuck Howarth, a member of The Howarth Group, on the subject of Owners's bad faith.  Because whether the Coles have met their burden to offer evidence for each of the essential elements of the bad-faith tort is a legal question, the court has not given weight to Mr. Howarth's opinions on that matter to the extent he testified on them.  *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("The evidence presented cannot consist of conclusory allegations or legal conclusions.").  The court GRANTS Owners's motion only to the extent he testified to legal questions, but does not strike the whole of his testimony.

*B.      The Parties' Cross Motions For Summary Judgment*

The parties submit cross motions for summary judgment on the Coles' breach of contract claim as to appraisal and Owners's counterclaims for declaratory relief as to additional living expenses and debris removal.  The court addresses the appraisal issue first and Owners's counterclaims for declaratory relief on debris removal and additional living expenses second.

*a.      Cross Motions On The Coles' Appraisal Claim*

The Coles argue that Owners breached the Policy by failing to submit to appraisal of the value of their dwelling and contents claims.

A breach of contract claim requires a party to show that a valid contract existed; the plaintiff's performance under the contract; the defendant's nonperformance; and damages. *Emps. Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998).  A nonperformance must be "material," which means that the nonperformance undermined the parties' objectives in making the contract.  *Sokol v. Bruno's, Inc.*, 527 So. 2d 1245, 1247-48 (Ala. 1988).

The court must enforce an unambiguous contract as written. *Drummond Co. v. Walter Industries, Inc.*, 962 So. 2d 753, 780 (Ala. 2006). But where the language is ambiguous, black-letter law in Alabama requires courts to construe insurance policies liberally in favor of the insured and strictly against the insurer. *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007).

The parties do not dispute that they had a valid contract, but Owners contends that the Coles established neither their own performance nor its nonperformance under the Policy. As to the Coles' nonperformance, Owners asserts that it properly rejected the Coles' requests for appraisal because the Coles failed to comply with the conditions precedent in the Policy's "What To Do In The Case of Loss" section. As to its own performance, Owners argues that the nature of the parties' dispute never required it to submit to the appraisal process. Both arguments fail.

### i. The Coles Complied With The Duties After Loss Provision

Owners argues that the Coles cannot establish their own performance under the Policy because they failed to comply with the Policy's duties-after-loss provision. The court disagrees.

Alabama courts routinely uphold the validity of "duties after loss" provisions that oblige an insured to furnish information and documents to an insurer. *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998). When these duties are formed in the contract as "strict" conditions precedent, an insurer does not have to provide coverage until the insured complies with the conditions. *United Ins. Co. of America v. Cope*, 630 So. 2d 407, 411 (Ala. 1993). But the existence of such duties does not mean an insurer has an unlimited right to deny coverage based on minor deviations from the Policy's terms. Rather, the failure must have been material under the circumstances or defeated the purpose of the contract. *See Sokol*, 527 So. 2d at 1247-

48.  The court will address each of Owners's arguments that the Coles failed to satisfy the Policy's conditions precedent in turn.

### 1.    Timeliness of the Proof of Loss

First, Owners asserts that the Coles failed to submit the "proof of loss" form sent to them by Owners within 60 days of the loss, as required by the Policy and the Coles did not provide a signed inventory to Owners until September 2015.  Owners contends that these failures absolve it of its obligation to pay.

The Coles returned Owners's proof of loss form on June 4, 2015, about a-month-and-a-half after the actual due date and 14 days after the deadline extended by Owners.  So the Coles failed to timely submit a "proof of loss signed and sworn to" within the time frame offered by Owners and including all the requested information, such as an "inventory of all damaged and destroyed property" including quantities "in detail," actual cash values, receipts, and related documents to substantiate those values.  But, in this case and under these circumstances, the Coles' relatively brief delay in submitting their initial proof of loss after Owners's extension of the deadline was not a material failure to comply with the conditions precedent in the Policy.

To be sure, a line exists that, once crossed, means a failure to submit a proof of loss *per se* abrogates an insurer's responsibility to adjust and pay a claim.  For example, when an insured fails to submit an accurate proof of loss before filing the lawsuit, the breach may be material thus releasing the insurer from any obligations.  *See, e.g.*, *Hillery v. AllState Indem. Co.*, 705 F. Supp. 2d 1343, 1364 (S.D. Ala. 2010) ("Allstate could not possibly calculate or pay their claim with the inaccurate information provided. . . .  Plaintiffs' unreasonable refusal to cooperate amounts to a material breach of plaintiffs' duties under the Policy . . . .").  Those circumstances do not apply here because the Coles submitted their proof of loss only 14 days after the extended

deadline and well before filing the lawsuit. And the Coles' proofs of loss were, as far as the court can tell on the evidence presented here, not inaccurate. The Coles presented what appears to be a *bona fide opinion* about the value of their claim.

Similarly, the court acknowledges that if the delays are part of a larger scheme to stonewall and dodge an insurance company's efforts at investigating a loss, even a relatively small failure to comply can and often will be material. *See Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1348 (M.D. Ala. 2012). As the court explained in *Pittman*: "[I]t makes sense to construe the post-loss duty provisions as strict conditions precedent to coverage, as the *Nilsen* and *Hillery* courts have done, because doing so forces the insured to help the insurer investigate the merits of the claim at the outset rather than allowing him to stonewall and let him hold the threat of litigation over the insurer's head like the sword of Damocles." *Id.*

But here, an untimely proof of loss did not hinder Owners's investigation where the cause of the fire was known and undisputed, and Owners's adjustors had uninhibited access to the property immediately after the fire. And the Coles complied with all of Owners's investigatory requests, including sitting for examinations under oath. A reasonable jury could not conclude that the Coles tried to hinder or stonewall Owners's investigation.

The Coles' delayed submission of a contents inventory, under these circumstances, was an immaterial failure to timely comply. Because in the Coles' view the fire caused a total loss of their home and its contents, their inventory is far lengthier than, for example, an inventory for a burglary might be. In addition, Owners's third-party salvage company had possession of some of the Coles' furniture for five months after the fire, and the Coles promptly submitted their inventory, signed by Ms. Cole on each page, after determining that the restored furniture was unsatisfactory. And the Coles told Owners early on that they disputed the extent of the damage

to their home and Owners knew that the Coles had a third-party investigating their claim. Further, Owners provided the Coles with contradicting information about whether they had to keep all damaged property, as discussed below. At the same time, the parties were also addressing the structural damage to the home.

Of course, Owners did not breach the Policy by refusing to pay or to engage in the appraisal process *until* the Coles submitted their proofs of loss and accompanying inventory. Alabama courts are clear that "an insurer's obligation to pay covered claims under a policy of insurance is not triggered until the insured complies with the insurer's reasonable requests for statements and documents pursuant to a 'duties after loss' provision." *See Hillery*, 705 F. Supp. 2d at 1362. But once the Coles had complied with the Policy's conditions precedent by submitting the required and requested documents, Owners no longer had any legitimate excuse not to act on the Coles' claim.

The court finds that, the one-and-a-half-month delay in submitting the proof of loss and documentation was not a material breach under these circumstances; the Coles satisfied any "strict" condition precedent based around timeliness by fully cooperating with Owners's investigation and providing all requested documents before initiating this lawsuit.

### 2.  *Sufficiency of the Proof of Loss*

Next, Owners contends that the Coles failed to support their late-submitted proof of loss and inventory with sufficient evidence to satisfy their obligations under the Policy. However, the record shows that the Coles submitted an inventory including *all* of the requested information. That the inventory did not include receipts is immaterial. The vast majority of the items on the inventory were for things for which few people keep receipts, such as miscellaneous household items. The Coles went further than required by including hyperlinks to replacement items for

many of the more-expensive items lost or damaged in the fire. The Coles, in their examinations under oath, noted that most of their furniture was bought from "Standard Furniture." The Coles provided to Owners their sales history with Standard Furniture, which included information about the Coles' purchases of furniture over 10 years. (Doc. 53, Exhibit 2).

The Coles supported the veracity of their inventory by promptly sitting for examinations under oath. In fact, the letter sent by Owners's counsel demanding that the Coles submit to the examinations noted that the Coles had already provided dates to do so. The parties' submitted materials also reveal many photographs of the Coles' home, its contents, and the damage. And Owners conducted its own investigation into the loss, including two unfettered visits to the property by its adjustors and an examination of the contents by a third-party salvage company, which was supposed to have compiled for Owners a report on which items were salvageable and which were not.

Lastly, Owners failed to tell the Coles what, exactly, it disputed about the Coles' extent-of-damages claim. Instead, Owners relied on vague statements that it was still reviewing the claim but did not identify any specific items for which it needed further proof. Mr. Eshenour, in his deposition, even noted that, as far as he remembered, the Coles had provided all the documentation that Owners had specifically requested. (Eshenour Depo. at 145). The court thus finds that the Coles complied with the Policy's requirement that they support their proofs of loss and inventory with evidence.

### 3.      *Duty to Exhibit Property*

Finally, Owners says that the Coles cannot succeed with their breach of contract cause of action because they failed to comply with the duty-to-exhibit-property section of the Policy by

"unilaterally" disposing of their personal property "immediately" after the fire.  (Doc. 35-1 at 14-15).

However, that claim is belied both by the Coles' conduct, the text of the contract, and statements by Owners's agents.  The Policy only requires the Coles to "exhibit the damaged property" to Owners "as often as may be reasonably required."  The Coles twice exhibited the dwelling to Owners's insurance adjustors Mr. Bonhomme and Mr. Eshenour, and to ServiceMaster, Owners's third-party property salvaging contractor, and the Coles gave all those representatives unfettered access.  Owners disputes that Mr. Eshenour had "full access to the premises" because "the testimony that he was not prevented from coming to the subject property does not equate to having full access at all times."  (Doc. 48 at 3-4).  But the contract requires the Coles only to exhibit their property as reasonably *required*.  Mr. Eshenour neither required nor requested "full access at all times."  The Coles could only do what Owners asked of them.

Nothing in the record suggests that the Coles prevented Owners's representatives from further investigating the property at any time after the fire and before the Coles began disposing of the property.  Indeed, the Coles, through The Howarth Group's letter to Owners, offered to go to the house and discuss each specific item in dispute.  Owners ignored that offer.

And Owners ignores that its adjustor, Stanly Bonhomme, told the Coles on the day of the fire that they could throw away the damaged contents from the living room.  Owners did not tell the Coles *until six months later* that they had to keep all their damaged property.

Furthermore, Owners hired a third-party company to inspect the property to determine the extent of the damage to the Coles' personal property.  The Coles exhibited their personal property for them and their statements that ServiceMaster told them that *only* 13 items were salvageable are undisputed.  Owners conjectures that ServiceMaster may have indicated that the

Coles' other property did not need refurbishment, but does not point to any evidence supporting

that claim. An equally plausible inference could be that ServiceMaster thought everything else

was beyond salvage and was a complete loss.

The Coles acted within the terms of the contract by relying on the insurance adjustors'

and third-party company's statements about what did and did not need to be kept. Owners

cannot deny coverage on this basis.

ii. *Owners Failed To Comply With The Appraisal Provision*

On the subject of its own performance under the Policy, Owners argues that it did not

need to engage in the appraisal process because the parties' differences of opinion about the

extent of the damage to the Coles' home and personal property are "scope of loss" disputes, not

value disputes. (Doc. 48 at 15). The court finds that Owners breached the Policy by failing to

commit to appraisal once the Coles had satisfied their duty to comply with Owners's

investigation, disputed the amount of loss, and demanded appraisal.

The Policy states that if either of the parties fails "to agree on the actual cash value or

*amount of loss covered*," then either party may demand appraisal. Simply put, the Coles say the

amount of loss covered is one amount; Owners says a different amount. In short, they dispute

the "amount of loss covered."

Owners points to *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382 (Ala. 2007), to

support its conclusion that the appraisal provision permits an appraisal only to determine the

value of items, not whether the Policy covers the loss. In *Rogers*, the Alabama Supreme Court

held that an appraisal provision that stated "if you or we fail to agree on the amount of loss,"

either party could demand that the amount be set by appraisal, did not permit an appraiser to

determine issues of coverage and causation. *Rogers*, 984 So. 2d at 383-84. Specifically, the

appraiser could not resolve the parties' dispute about whether the home had been damaged by a covered loss—tornado—or by an uncovered loss—ground settlement. *Id.* at 383-84, 392.

But here, the dispute is not about what *caused* a loss–the fire caused a covered loss. The question is the *extent* of the losses that the fire caused, or, in other words, the value of the covered loss that the fire caused. "Extent of loss" disputes fall squarely within insurance appraisal provisions. *Rogers*, 984 So. 2d at 391.

The Alabama Supreme Court in *Rogers* observed the difference between "extent of loss" and "cause of loss" disputes by noting that other courts carefully avoid conflating causation or coverage disputes with value disputes. *Rogers*, 984 So. 2d at 391. The Court noted that failing to distinguish between causation and value disputes would permit parties to "approach every disagreement on extent of damage as a causation, coverage[,] or liability issue" so that "either party could defeat the other party's request by labeling a disagreement as a coverage dispute." *Id.* (quoting *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 903 (Tex. App. 2006)).

In this case, Owners has attempted to conflate the Coles' value and extent of damage claims into a question of legal causation or coverage. Stated another way, the parties agree that a fire occurred and that things damaged by the fire would be covered under the Policy. Owners and the Coles, therefore, only disagree about the extent and value of the loss. That subject is primed for appraisal.

The court will GRANT summary judgment in the Coles' favor on their claim that Owners breached the contract by failing to comply with their demand to use the appraisal provision to determine the value of their claim. The court will DENY Owners's cross motion for summary judgment on the same. The court will ORDER Owners to submit to the appraisal process with the Coles to determine the values of the Coles' dwelling and contents claims.

### b. *Cross Motions Regarding Debris Removal*

Owners moves for summary judgment in its favor on the Coles' cause of action that Owners breached the contract by failing to reimburse them for debris removal and on its own cause of action for declaratory relief that it does not need to pay the Coles' debris-removal claim. The Coles do not move for summary judgment in their favor on the debris removal portion of *their own* breach of contract cause of action, but they do move for summary judgment in their favor on Owners's corresponding counterclaim against them.

Owners asserts that, because the Coles failed to provide receipts for their expenses incurred in the debris removal, it owes the Coles nothing for it. However, as the Coles observe, the Policy does not contain a specific provision requiring receipts for debris removal. And the Coles provided sufficient evidence to raise a genuine dispute of material fact over Owners's failure to pay for debris removal by stating in their examinations under oath what they paid to remove the debris. Further, Owners does not contest that debris was removed from the Coles' home. The court will DENY Owners's motion for summary judgment on this ground.

The court will likewise DENY the Coles' motion for summary judgment or dismissal of Owners's counterclaim for declaratory relief on their debris removal claim. The Coles' only argument on this point is that the claim is duplicative of their own breach of contract claim such that it is unnecessary. Although this counterclaim is essentially handcuffed to the resolution of the Coles' own breach of contract claim, Owners is entitled to bring it. *See* Fed. R. Civ. P. 13 (discussing counterclaims). In short, the Coles do not advance a valid legal argument to support their motion at this time.

Owners also moves for summary judgment in its favor on the Coles' cause of action that Owners breached the contract by failing to reimburse them for additional living expenses and on its corresponding counterclaim for declaratory relief that it owed none.

As with the debris-removal claim, the Coles move for summary judgment in their favor on Owners's counterclaim for declaratory relief on the ground that Owners's counterclaim is duplicative of their corresponding breach of contract allegation. The Coles do not move for summary judgment in their favor on their own related breach of contract cause of action. The court will DENY the Coles' motion for summary judgment or dismissal of Owners's additional living expenses counterclaim for the same reason it denies the motion for summary judgment on the debris-removal counterclaim, *i.e.*, because Owners is entitled to bring the counterclaim even if it duplicates the Coles' version of the claim.

That leaves Owners's arguments in its motion for summary judgment in which it asserts that the Coles failed to provide receipts for their additional living expenses. This argument fails to recognize the circumstances of the case. Throughout the claims process and this litigation, the Coles have claimed additional living expenses based on lost rental income; they do not claim these additional expenses based on out-of-pocket payments that would be evidenced by a receipt. Owners cannot claim that the Coles materially breached the contract by failing to submit receipts for payments they did not make. Rather, the Coles complied with the conditions precedent for adjusting the additional living expenses claim by submitting tax returns evidencing their prior income from their rental property they could not rent because they lived in it after the fire.

Owners also contends that, because it paid for four months of living expenses and because repairs would have only taken four months to complete, it owes the Coles no additional

living expenses under the terms of the Policy.  The Policy states that Owners will cover additional living expenses and loss of rents "for only the shortest time required to repair or replace the residence premises or for [the insured] to be permanently relocated."  The provision does not define whether the phrase "time required to repair or replace" means an estimated time or an actual time.

Reading the Policy in the light most favorable to the insured, the provision does not, as Owners claims, permit Owners to, first, unilaterally determine an estimated minimum-time-to-repair and, second, only pay additional living expenses for the estimation it conjures.  If the court read the provision to permit Owners to act in this way, Owners would be able to cut off homeowners from payments to force them to accept its viewpoint on the value of an underlying dwelling-loss claim.

Furthermore, Owners bears at least some responsibility for the delay in repairing the Coles' home.  For example, Owners apparently wanted the Coles to preserve the personal property and damage to their home so it could evaluate the value of the Coles' claims, but did not ask them to do so until six months after the fire, then used that failure as a ground to delay or deny coverage.  But the Coles could not move back into their home without making the necessary repairs and throwing out the destroyed property.  And Owners further delayed the resolution of the Coles' claims by refusing the appraisal process.  For those reasons, the provision more convincingly suggests that, under these circumstances, Owners needed to pay living expenses until the home was, in fact, repaired, or until the amount reached the $35,800 policy limit.

Accordingly, the court will DENY Owners's motion for summary judgment in its favor on the additional living expenses claims.

C. *The Coles' Motion for Summary Judgment on Owners's Remaining Counterclaims*

The court next addresses the Coles' motion for summary judgment on Owners's counterclaim that the Coles breached the Policy's fraud and misrepresentation provision. The court addresses Owners's fraud counterclaim second alongside Owner's repayment of fraudulently-acquired sums claim, which Owners ties to that alleged fraud. Third, the court briefly addresses Owners's spoliation counterclaim.

a. *Owners's Breach of Contract Counterclaim (Re: Fraud and Misrepresentation)*

Owners asserts that, by submitting false values for their claims, the Coles breached the fraud and misrepresentation provision of the Policy, which voids the Policy if an insured intentionally conceals or misrepresents a material fact, engages in fraudulent conduct, or makes false statements relating to the insurance. The Coles assert in their motion for summary judgment that Owners has failed to establish any specific false misrepresentation.

Owners argues that the Coles committed fraud by asserting that they could not salvage their furniture and that their entire roof had been damaged. Owners also responds that "the extreme difference" between its valuation of the loss and the Coles' "vastly inflated valuations" evidence the Coles' fraud. Owners misunderstands misrepresentation of fact versus representation of an opinion.

In this case, in the materials they submitted to Owners, the Coles presented an *opinion* about their losses. Owners, having made separate conclusions as to the value, treats its own *opinions* about the value as fact. But, without more, a disagreement as to a dollar amount for loss does not equal fraud or misrepresentation. Neither the Coles, nor Owners, have established a fact about the valuations—the parties have merely presented differing opinions about how

28

much damage the fire caused. Accordingly, the court will GRANT the Coles' motion for summary judgment in their favor on Owners's breach of contract claim premised on the Coles' alleged fraud and misrepresentations.

### b. Owners's Misrepresentation Counterclaim

In response to the Coles' motion for summary judgment, Owners asserts that the Coles committed fraud on essentially the same premises as it alleges the Coles breached the fraud provision in the contract.[2] The elements of a misrepresentation claim are (1) misrepresentation of a material fact; (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was reasonably relied on by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421-22 (Ala. 1997).

As noted above, Owners claims that the Coles misrepresented the extent of the damage to their home and the extent of the loss to their personal property. The only specific "misrepresentation" that Owners points to is the dispute over whether the Coles' roof needed to be replaced or could be repaired. But Owners had and has always relied on its own opinion, informed by the two inspections of the Coles' property, about whether the Coles' roof needed to be replaced. Without any evidence of reliance on the Coles' representations, Owners's claim must fail.

Owners also generally contends that the Coles misrepresented the value of the property damaged by the fire. But "Alabama courts consider a statement of value to be an opinion and not a fact." *See Kaye v. Pawnee Const. Co.*, *Inc.*, 680 F.2d 1360, 1368 (11th Cir. 1982). This key legal point must have slipped Owners's mind when drafting and defending its fraud claims;

---

[2] The Coles also assert that Owners's counterclaim must be dismissed under Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to state a claim with particularity.

when it comes to *the Coles'* claims against it, Owners recalls that mere "differences of opinion" as to values and estimations are insufficient to sustain fraud allegations. (Doc. 35-1 at 23 & n.2; Doc. 49 at 12-14).

The court will GRANT the Coles' motion for summary judgment on Owners's fraud counterclaim.

In addition, the court will GRANT the Coles' motion for summary judgment on Owners's declarative-relief counterclaim for sums paid to the Coles because of the alleged fraud. As stated, Owners has not shown that the Coles committed fraud.

        *c.*      *Owners's Spoliation Counterclaim*

Owners claims that the Coles spoliated evidence when they threw away the contents of their home. "Spoliation is an attempt by a party to suppress or destroy material evidence favorable to the party's adversary." *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 176 (Ala. 2000); *Williams v. Michelin Tire Corp.*, 496 So. 2d 743, 756 (Ala. 1986). But spoliation is *not* an independent cause of action in Alabama. *Christian v. Kenneth Chandler Constr. Co.*, 658 So. 2d 408, 413 (Ala. 1995). Instead, spoliation is more typically an evidentiary issue addressed by permitting the jury to make an inference of liability or guilt. *See id.* at 412 (observing that spoliation "may in some instances be regarded as a sufficient foundation for an inference of the spoliator's guilt or negligence") (quotation marks and alteration omitted). For that reason, the court will GRANT the Coles' motion to dismiss this claim (doc. 31 at 21) and DISMISS Owners's spoliation claim.

### D.    Owners's Motion for Summary Judgment on the Coles' Causes of Action

Lastly, the court addresses Owners's motion for summary judgment on the Coles' remaining unaddressed allegations.  These claims are the Coles' fraud by misrepresentation, suppression, deceit, and bad faith causes of action.

### a.    The Coles' Misrepresentation Claim

In its motion for summary judgment, Owners asserts that the Coles have failed to identify any misrepresentation by it.  In their response to Owners's motion for summary judgment, the Coles point to Mr. Bonhomme's direction to dispose of the unsalvageable items and Owners's subsequent complaint about the disposal of the items as fraud.  A reasonable jury could find that this claim meets the elements of misrepresentation.

First, Mr. Bonhomme, Owners's insurance adjustor, made a misrepresentation, namely, his statement that the Coles should throw away all the contents of their living room.  Furthermore, a jury could conclude that Mr. Bonhomme's representation that the Coles could throw into a dumpster everything in the living room—a room that did not suffer direct fire damage—also implied that the Coles could throw away *all* their damaged property.  Owners later told the Coles to *keep* all their damaged property, nearly six months after the fire and after they had thrown it away, and disputed whether the fire had caused the loss of the property Mr. Bonhomme told the Coles they could throw away.

Second, a jury could conclude that Mr. Bonhomme negligently or recklessly made this representation, particularly given Owners's about-face on whether the personal property needed to be preserved.

Third, a jury could conclude that the Coles reasonably relied on the representations made by Mr. Bonhomme, Owners's insurance adjustor in charge of their insurance claim.

Fourth, as noted, this misrepresentation resulted in Owners's denial or delaying of the Coles' claim. So the Coles have established damages as a result of the misrepresentation. The court will DENY Owners's motion for summary judgment on the Coles' misrepresentation claim.

>    b.    *The Coles' Suppression and Deceit Claims*

Owners also moves for summary judgment in its favor on the Coles' other fraud-based claims pleaded in the complaint: suppression and deceit. The Coles do not respond to this part of Owners's motion for summary judgment. (*See* doc. 47). That is, although the Coles indicate in their initial pleadings that they assert fraud on the bases of misrepresentation, deceit, and suppression, in their response to Owners's motion for summary judgment, they identify only one fraud-based theory, namely, their claim that Mr. Bonhomme misrepresented that they could throw away some or all of their damaged personal property after his initial inspection.

"In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'" *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986)). And the court need not divine a party's arguments from the evidence he provides at summary judgment. *Id.* So grounds alleged in a complaint, but ignored at summary judgment are abandoned. *Id.*

The court finds that the Coles abandoned any suppression- or deceit-based fraud theory by failing to advance a relevant argument in response to Owners's motion for summary judgment. *Resolution Trust*, 43 F.3d at 599. Having abandoned those theories of fraud, the court will not allow the Coles to present such claims at trial.

c.      *The Coles' Bad Faith Claim*

Finally, Owners moves for summary judgment in its favor on the Coles' bad faith claims. The Coles respond that Owners's intentional refusal to pay their claims, despite having all the information it requested and no arguable reason to deny coverage, establishes Owners's bad faith.

Under Alabama law, bad faith is a "singular" tort with two different methods of proof—"normal" bad faith, also known as bad faith refusal to pay, and "abnormal" bad faith, also known as bad faith failure to investigate. *See State Farm Fire & Cas. Ins. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). The Coles allege both methods, primarily contending that Owners in bad faith failed to properly investigate their claim. Owners asserts that it neither breached the insurance contract, an issue the court already resolved against it,[3] and that it had a legitimate or arguable reason for its refusal to pay or engage in the appraisal process. The court finds that the Coles have identified sufficient evidence to a raise a jury question about whether Owners had a legitimate or arguable reason not to pay the Coles' dwelling and contents claims under the Policy.

A party alleging a claim under "normal" bad faith has the burden of proving four elements: "(1) a breach of the insurance contract; (2) an intentional refusal to pay the insured's claim; (3) the absence of any legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason." *Mutual Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004).

"Abnormal" bad faith adopts the elements of "normal" bad faith and adds a conditional fifth element: "the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 258

---

[3] *See* Section B above.

(internal quotation omitted).  In effect, under the "abnormal" bad faith theory, a plaintiff can establish that the insurer had actual knowledge of the lack of a legitimate or arguable reason to deny the claim because the insurer intentionally failed to determine whether such reason existed. *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006).  The "abnormal" bad faith theory is akin to deliberate ignorance.  The insurer cannot refuse to investigate the claim or stick its head in the sand about it and avoid bad-faith liability by failing to discover whether it had any legitimate or arguable reason to deny a claim.

In its motion for summary judgment, Owners asserts that it did not breach the Policy because it was under no obligation to pay because the Coles failed to meet the Policy's conditions precedent to coverage.  In addition, Owners asserts that it had a legitimate or arguable reason not to pay.  Specifically, those reasons were the Coles' failure to timely submit their contents inventory; failure to submit receipts or documents in support of the contents claim; failure to submit a timely or "proper" proof of loss; and the Coles' alleged spoliation of evidence.

The court rejects Owners's first argument because it has already found that, under the conditions discussed above, the Coles satisfied their duty to cooperate under the Policy.  Owners therefore breached the contract by failing to engage in the appraisal process to settle the value of the claims.

Genuine issues of material facts exist as to the other elements of bad faith, *i.e.*, whether Owners intentionally denied the claim,[4] whether it had a legitimate or arguable reason to deny

---

[4] Owners appears to take inconsistent positions on whether it actually denied the Coles' claims.  Owners seems to say that, because of the Coles' failure to meet the conditions precedent in the Policy, it *could* have denied coverage.  But Owners also asserts that, despite its alleged non-obligation to provide coverage to the Coles, it did not exert its right to deny the claim. (*See* doc. 35-1 at 12-16, 18).  Essentially, Owners contends that it could have left the Coles' claims open indefinitely, acting on the claims or not acting on the claims at its leisure.

the claim, and whether it had actual knowledge of the lack of a legitimate or arguable reason to deny the claim. Although the parties have not yet determined the actual value of the Coles' dwelling and contents claims, the Coles can show "actual knowledge" of the absence of any legitimate or arguable reason to deny the claim through the "abnormal" bad faith method of proof. A reasonable jury could infer from the facts of this case that Owners engaged in a pattern of behavior to delay paying the claim and avoid making a good-faith investigation of it, including submitting to appraisal, a process that would have resulted in a final determination on the value of the claim.

Because genuine issues of material fact exist as to at least one of the two bad faith methods of proof, the court must DENY Owners's motion for summary judgment on the bad faith cause of action.

### E. Notice of Court's Intent to Enter Partial Summary Judgment in the Coles' favor on Debris Removal and Additional Living Expenses

The Coles have not moved for summary judgment in their favor on their debris removal and additional living expenses claims. Nor have the Coles made any substantive argument that the court should grant summary judgment in their favor on Owners's debris removal and additional living expenses declaratory judgment causes of action. However, based on the materials before the court, the court finds that no genuine issue of material fact exists as to Owners's liability for debris removal and additional living expenses. Of course, the parties do dispute the amount of loss covered for debris removal and additional living expenses.

Under these circumstances and after ruling against Owners on all of its defenses to coverage, the court finds that partial summary judgment on the issue of coverage liability for debris removal and additional living expenses should be granted in favor of the Coles. To be clear, this finding applies only to the coverage question but not as to the amount. Pursuant to

Fed. R. Civ. P. 56(f), the court gives Owners notice of its intent to grant partial summary judgment in favor of the Coles on this issue and will give it an opportunity to respond. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant [or] grant the motion on grounds not raised by a party[.]"). Owners should also address whether the amount of these losses should be included in the appraisal process.

<u>**CONCLUSION**</u>

In summary the court finds: Owners has breached its insurance policy with the Coles by failing to engage in the appraisal process once the Coles had met the conditions precedent contained in the Policy in late December 2015. The court will GRANT the Coles' cross motion for summary judgment (doc. 33) on this issue, and DENY Owners's cross motion for summary judgment. The court will ENTER SUMMARY JUDGMENT in the Coles' favor on this cause of action and ORDER Owners to engage in the Policy's appraisal process with the Coles.

The court will DENY both parties' cross motions for summary judgment on Owners's declaratory judgment cause of action about its liability for debris removal and additional living expenses, as well as Owners's motion for summary judgment on the Coles' breach of contract cause of action regarding the same.

Although the court will deny these cross motions for summary judgment, the court gives Owners notice of its intent to enter partial summary judgment as to Owners's liability for breach of contract on the claims for coverage for debris removal and additional living expenses; this temporary finding does not extend to the amount due, as the parties contest the amount of loss. Owners must SHOW CAUSE in writing why the court should not grant partial summary judgment in the Coles' favor as to liability for these claims on or before April 12, 2018. Owners

should include any evidentiary materials relevant to the court's decision on this matter in its response to the court's order to show cause. Owners should also address whether the amount of these losses should be included in the appraisal process.

A genuine issue of material fact exists as to whether Owners misrepresented that the Coles could throw away the contents of their home. The court will DENY Owners's motion for summary judgment as to the Coles' misrepresentation cause of action. A genuine issue of material fact also exists as to whether Owners acted in bad faith by failing to properly investigate the Coles' insurance claim. The court will DENY Owners's motion for summary judgment as to the Coles' bad faith cause of action.

The court will GRANT the Coles' motion for summary judgment on Owners's other counterclaims: fraud (including the related repayment of fraudulently-obtained sums claim), spoliation, and breach of the Policy's fraud and misrepresentation provisions. The court will DISMISS Owners's spoliation cause of action and ENTER SUMMARY JUDGMENT in the Coles' favor on Owners's fraud and breach of contract causes of action.

These causes of action remain in this case: (1) the Coles' fraud by misrepresentation cause of action; (2) the Coles' bad faith cause of action; (3) the Coles' breach of contract cause of action regarding debris removal and additional living expenses; and (4) Owners's counterclaim causes of action for declaratory relief regarding debris removal and additional living expenses. The court will address these last two causes of action upon Owners's response to the court's order to show cause.

The court will enter a separate Order consistent with this Opinion.

**DONE** and **ORDERED** this 29th day of March, 2018.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE